# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MICHAEL LEE PLEASANT,**

      **Petitioner,**                         **CASE NO. 2:10-CV-618**

                                             **MAGISTRATE JUDGE ABEL**

**v.**                                         **JUDGE FROST**

**ROSS CORRECTIONAL INSTITUTION,**

      **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner Michael Lee Pleasant, a state prisoner, has filed a petition for a writ of habeas corpus under 28 U.S.C. 2254. This matter is before the Magistrate Judge on the petition, Respondent's Return of Writ, Petitioner's Traverse, and the exhibits of the parties. For the reasons that follow, Petitioner's motion for leave to supplement the record, Doc. 11, is **DENIED**.

The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> The Franklin County Grand Jury indicted appellant on the following charges: (1) aggravated robbery, with specification, in violation of R.C. 2911.01; (2) two counts of robbery, with specification, in violation of R.C. 2911.02; (3) felonious assault, with specification, in violation of R.C. 2903.11; and (4) failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331. The Grand Jury subsequently re-indicted appellant in a separate case on the robbery counts. The trial court consolidated the cases.
>
> A jury trial commenced on June 2, 2008. Plaintiff-appellee, the State of Ohio ("appellee"), called Detective Guy Grinstead, of the Whitehall Police Department, as its first witness. Grinstead testified to the following.

Grinstead was on patrol in the city of Whitehall on June 17, 2007. At about 1:30 a.m. on that date, he received a call that there was a robbery in progress at a Shell gas station located at the intersection of James Road and Broad Street in the city of Columbus. He received a description of what was happening, and he was told to look out for a stolen yellow taxi cab. The cab had last been seen traveling east on Broad Street. While traveling west on Broad Street, Grinstead saw a car coming toward him with no headlights on. He saw that it was a yellow cab and thought there was a "good chance" that it was the cab reported stolen. (Tr. 37.)

The cab turned southbound from Broad Street, and Grinstead followed. Although Grinstead activated his lights and siren, the cab did not stop. The cab was traveling at a high rate of speed, about 50 m.p.h. in a 25 m.p.h. zone, through a residential area, ignoring stop signs, and failing to slow down for speed bumps. When the cab attempted to turn east, it crashed into the front of a house. Grinstead was directly behind the cab when the crash occurred.

Following the crash, the driver of the cab got out. At that point, as Grinstead began to exit his cruiser, he "was within 10 to 15 feet" of the driver. (Tr. 44.) The cruiser's headlights were on and pointing toward the cab. Grinstead described the driver as a light-skinned, black male with no shirt on, wearing black jeans, and having a short afro. The driver took off running.

The suspect first ran between two houses, and Grinstead followed him. The suspect ran along the street, through tall grass, and across a street to a driveway access point. At that point, Grinstead was "maybe 20 yards away." (Tr. 45.) Grinstead "never lost sight" of the suspect during the chase. (Tr. 47.)

As the suspect entered a tree line, he turned toward Grinstead and fired one shot. Grinstead knew it was a gunshot because he heard it go off, and he saw the muzzle flash. Grinstead took cover behind a building and radioed for assistance. Grinstead lost sight of the suspect as he entered the wooded area, and Grinstead did not pursue him further. Other police officers arrived, they pursued the suspect, and they ultimately apprehended him. Those officers brought the suspect to Grinstead, and Grinstead identified him as the driver of the cab. He was "100 percent sure." (Tr. 52.) At trial, Grinstead identified appellant as that same driver.

On cross-examination, Grinstead confirmed that the southbound

portion of the chase, before the crash, continued for about three or four blocks. Grinstead also confirmed that, just after the crash, the cruiser's headlights and overhead strobe lights were on. He said that, when he exited the cruiser, he pulled out his weapon. The area between the houses, where the suspect first ran, was darker than the crash site.

Grinstead said that he "caught a glimpse" of the suspect's face when he was driving the cab and turning southbound. (Tr. 67.) He never saw the suspect holding a gun, only the flash from the gun. When the suspect turned to fire at him, he did not turn and face Grinstead completely. The first time Grinstead got a "good look" at the suspect was when he was asked to identify the suspect after his capture. (Tr. 77.)

Jason Robinson testified to the following. Robinson was working at a Shell gas station on June 17, 2007. In the early morning hours, Robinson looked out the side window of the station and saw a man forcing a cab driver out of a cab. Robinson's view of the incident was blocked slightly, but he had a "pretty good" view of what happened. (Tr. 104.)

Robinson identified still photos taken from the station's surveillance camera. He said that the photos depicted the man who robbed the cab driver. Robinson never saw the man holding a weapon, but he did see the man's hand out and the driver leaning back. The man jumped into the cab and drove off.

Robinson subsequently viewed a photo array and identified appellant as the man who robbed the cab driver. Robinson said that he "didn't actually get a clear look at him." (Tr. 118-119.) He said that his identification of the man was "more physical than it was facial." (Tr. 119.) At trial, he could not identify appellant as the robber.

On cross-examination, Robinson confirmed that the individual he identified from the photo array "best fit the description" he remembered. (Tr. 122.) He agreed that it most looked like the man who robbed the driver, but he did not "say that that is the guy." (Tr. 122.)

Abdifatah Yusuf testified that he was driving his yellow cab during the early morning hours of June 17, 2007, and he stopped at a gas station. He identified the still photos depicting the incident at the station.

Yusuf said that a man with a gun demanded money from him, and Yusuf gave him about $60. The man ordered him out of the cab and tried to punch him. The man pointed the gun at Yusuf and told him to get down on his knees. Yusuf ran behind the cab and, when the man ordered him to come back, Yusuf refused. The man circled the cab in pursuit of Yusuf, got in the cab, and then drove east on Broad Street.

Later, police officers took Yusuf to where the cab had crashed following the chase. He identified the vehicle as his stolen cab. He saw the man who had been apprehended, and he recognized him as the man who had robbed him. He stated that he recognized him because he was not wearing a shirt. He never got a good look at the man's face, however. At trial, he could not identify appellant as the robber.

Patricia Larkins testified that she was at home and awake in the early morning hours of June 17, 2007. Larkins saw the police cruiser pursuing the cab and also saw the cab crash. She saw a black man run in front of the cruiser and into the woods. She heard "[a]t least two shots." (Tr. 157.) She also saw the gun flash.

On cross-examination, Larkins confirmed that there are drug dealers in the neighborhood. She agreed that, when police pull up to a house, some people run away. She also confirmed that she did not see a gun, but she heard two gunshots and saw two flashes, which were about two blocks away. She admitted that she has difficulty seeing in the dark. She wears glasses, but she was not wearing them that night.

Columbus Police Officer Heidi Dripps testified that she was on patrol in the early morning hours of June 17, 2007. She and her partner responded to a call concerning a carjacking and a police officer's pursuit of the car. Once they arrived at the area where the suspect was being pursued, Dripps' duties included setting up a perimeter. Officers were not able to find the suspect initially, but Dripps and an officer from a canine unit pursued him with a police dog.

While a number of officers searched the area, Dripps saw a man matching the suspect's description-"a male black, * * * light-skinned, no shirt." (Tr. 184.) Officers pursued him, and Dripps lost sight of him. Upon hearing heavy breathing, Dripps saw the suspect crouched down next to a chimney and a chain-link fence. One officer jumped the fence to apprehend the suspect, who was resisting. The officers maced the suspect and subdued him. The officers never found a gun,

and the suspect said he did not have a gun.

On cross-examination, Dripps confirmed that, once the officers saw the suspect crouching next to the fence, the suspect did not flee. Based on police dispatch records, Dripps testified that the call that an officer was in trouble was aired at 1:55 a.m., and the call that officers had apprehended the suspect was aired at 2:29 a.m.

On re-direct, Dripps said that the suspect was breathing heavily and sweating, and he was not wearing a shirt. She talked to the suspect at the scene, and she rode with him in the paddy wagon. At trial, she identified appellant as the suspect taken into custody.

Columbus Police Detective George Robey testified that he arrived at the scene following the crash and the suspect's arrest. He confirmed that no shell casings were found at the scene, and no gun was found. A gunshot residue test conducted on the suspect was negative, and the single fingerprint lifted from the cab did not match appellant.

At about 5:30 a.m. on the morning of June 17, 2007, Robey interviewed appellant. Appellant waived his right to have a lawyer present. During the interview, appellant told Robey that he had been at a bar at an unknown location that evening. He met a person he knew, but could not initially name, and they decided to meet some girls at another place. The person he met at the bar dropped him off at an unknown location and said he would be back. Appellant knocked on the door of a residence, and a woman told him to wait for ten minutes. While he was waiting, the person who had dropped him off ran by him. Appellant heard a gunshot, and police converged on the area. Appellant became fearful and ran.

Appellant also indicated to Robey in a vague way that the name of the person he met that night and saw running was Jeffrey Stewart. Robey later identified a Jeffrey Stewart, who was incarcerated at the time of the incident.

Robey identified still photos of the interview. He identified a tattoo on appellant's bicep and another tattoo of the word "April" on his neck. At trial, Robey identified the same tattoo on appellant's neck.

Finally, Robey testified that he spoke by phone with a person who identified herself only as "April" and who told Robey that appellant was not guilty and that a second person was involved. Although they arranged a time to meet at police headquarters, April never showed

up.

Robey also prepared a photo array, which contained appellant's photo, for Robinson. In preparing the photo array, Robey attempted to match injuries to appellant's face with the other individuals in the photos. To do so, he "Photoshopped on similar scars on each one of the people." (Tr. 228.) Robinson picked out appellant as the individual who robbed the cab.

On cross-examination, Robey confirmed that six or seven officers searched the area for shell casings and that none were found. As for his search for a Jeffrey Stewart, Robey confirmed that he had only searched a database of individuals who had been arrested before.

Following this testimony, appellee rested its case. Thereafter, appellant moved for acquittal pursuant to Crim.R. 29. Appellant's counsel specifically argued that the gun specifications for the robbery charges were not based on sufficient evidence. The court denied the motion.

Mark Greene, a crime scene search unit detective for the Columbus Police Department, testified on behalf of appellant. Greene processed the cab retrieved from the scene and was able to lift only one good fingerprint. He confirmed that the gunshot residue test conducted on appellant was negative. He described normal efforts to search a crime scene and said that shell casings typically travel five to ten feet from where the firearm was fired. He confirmed that no shell casings were found at the scene.

Following this testimony, appellant rested his case. Thereafter, appellant's counsel again moved for acquittal, and the court denied the motion.

Following deliberations, the jury rendered the following verdicts: (1) guilty on one count of aggravated robbery, with a gun specification; (2) guilty on two counts of robbery, with a gun specification; (3) not guilty on one count of felonious assault; and (4) guilty on one count of failing to comply with an order or signal of a police officer. The trial court entered judgment and sentenced appellant to 15 years in prison.

Appellant appealed, and he raises the following assignments of error:

ASSIGNMENT OF ERROR I

Trial counsel provided ineffective assistance and [appellant] was denied his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

ASSIGNMENT OF ERROR II

[Appellant's] conviction for Aggravated Robbery with Specification, Failure to Comply with an Order or Signal of Police Officer, and two counts of Robbery with Specification are against the manifest weight of the evidence.

ASSIGNMENT OF ERROR III

The trial court erred as a matter of law in denying [appellant's] motion for judgment of acquittal under Crim.R. 29, because the evidence presented at trial is legally insufficient to sustain a conviction for Aggravated Robbery with Specification, Failure to Comply with an Order or Signal of Police Officer, and two counts of Robbery with Specification.

*State v. Pleasant*, Nos. 08AP-558, 08AP-559, 2009 WL 311431, at *1-5 (Ohio App. 10th Dist. Feb. 10, 2009). On February 10, 2009, the appellate court affirmed the judgments of the trial court. *Id.* On June 17, 2009, the Ohio Supreme Court dismissed Petitioner's appeal. *State v. Pleasant*, 122 Ohio St.3d 1412 (2009).[1]

On July 8, 2010, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

1. Petitioner was denied the effective assistance of counsel under the

---

[1] Petitioner also filed, on March 12, 2010, a *pro se* motion to vacate judgment based on a defective indictment. The state trial court, however, apparently has never issued a ruling on this motion. *See Return of Writ, at 8; Exhibits 21, 22 to Return of Writ*. Petitioner does not raise this same issue in these habeas corpus proceedings.

Sixth Amendment to the United States Constitution.

Trial counsel failed to file a motion to suppress the pretrial witness identification of Mr. Pleasant obtained by means of a suggestive and highly prejudicial photo array and failing to call an alibi witness on behalf of the defense.

2. Petitioner was denied due process [] when the evidence was insufficient to convict him.

The trial court failed to grant Petitioner's Rule 29 motion for acquittal when the evidence as a matter of law was insufficient to convict him.

It is the position of the Respondent that Petitioner's claims are without merit or procedurally defaulted.

## MOTION TO SUPPLEMENT

Petitioner requests to supplement the record with the arrest records, attached to his motion, of Jeffery E. Stewart. *See Motion to Supplement*, Doc. No. 11. Petitioner contends that these records, which do not indicate that Stewart was incarcerated on the date of charges at issue, support his gateway claim of actual innocence, so as to justify a merits review of his procedurally defaulted claim of ineffective assistance of counsel. *See Reply to Respondent's Opposition to Motion to Supplement,* Doc. 13. Respondent opposes Petitioner's request. Respondent argues that the arrest records of Stewart constitute neither new evidence that was unavailable at the time of trial nor establish that Petitioner is actually innocent of the charges so as to justify a merits review of his procedurally defaulted claim of ineffective assistance of counsel and should not be considered in these proceedings. *See Respondent's Opposition to Motion to Supplement*, Doc. 12.

Rule 7 of the Rules governing Section 2254 Cases provides:

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be

8

authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rule 7, Rules governing Section 2254 Cases. A federal habeas court's review of a state court claim under 28 U.S.C. § 2254(d), is limited to the record that was presented to the state court in its adjudication of the claim. *Cullen v. Pinholster*, – U.S. –, 131 S.Ct. 1388, 1398 (2011). Here, neither Petitioner's claim of actual innocence, nor his claim of ineffective assistance of counsel based on his attorney's failure to present Stewart as an alibi witness were presented to the state courts. The provisions of § 2254(e)(2) apply where a federal court considers claims not adjudicated on the merits in the state court. *Cullen v. Pinholster,* 131 S.Ct. 1388, at 1401 (citation omitted).

Under 28 U.S.C. § 2254(e)(2), a Petitioner who has failed to develop the factual basis of his claim in the state courts may not obtain an evidentiary hearing on his claim in habeas corpus proceedings unless his claim relies on

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The record, however, fails to reflect Petitioner can establish he acted diligently in pursuing his claims. "Diligence for purposes of [§ 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend. . . upon whether those efforts could have been successful." *Williams v. Taylor*, 529 U.S. 420, 435 (2000).

Petitioner argues that it was due to the fault of his attorney that Stewart's arrest records were not earlier obtained or presented to the state courts. *See Petitioner's Response to Respondent's Opposition*, Doc. 13. Where the failure to develop the factual basis of a claim results from constitutionally ineffective assistance of counsel, the fault is not attributed to the petitioner or his attorney, but to the State. *See Zimmerman v. Davis*, No. 03-60173, 2010 WL 104452, at *9 (E.D. Michigan Jan. 7, 2010).

Petitioner's off-the-record claim of ineffective assistance of counsel – and the records he seeks to introduce in these proceedings – would have been properly presented to the state courts in a petition for post conviction relief under O.R.C. §§ 2953.21; 2953.23. Petitioner cannot establish that he acted diligently in presenting his claim of ineffective assistance of counsel to the state courts or in attempting to present the evidence he now seeks to use as a basis for this Court's review of the merits of that claim, since he has never pursued post conviction proceedings. Further, Petitioner cannot attribute this failure to the constitutionally ineffective assistance of counsel, since Petitioner had no right to counsel in those proceedings. *See Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425 (6th Cir.2003)(citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).

Although state prisoners may sometimes submit new evidence in

federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so. Provisions like §§ 2254(d)(1) and (e)(2) ensure that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.*, at 437, 120 S.Ct. 1479; see also *Richter*, 562 U.S., at ——, 131 S.Ct., at 787 ("Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions"); *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing").

*Cullen v. Pinholster*, 131 S.Ct. at 1401 (footnote omitted).

For these reasons, Petitioner's motion to supplement the record, Doc. 11, is **DENIED**.

## SUFFICIENCY OF THE EVIDENCE: CLAIM TWO

In claim two, Petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions. The Ohio Court of Appeals rejected this claim in relevant part as follows:

> [A]ppellant argues that his convictions were not supported by sufficient evidence. We disagree.
>
> Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *Jenks* at 273, 574 N.E.2d 492. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks*, paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).

Under R.C. 2911.01(A)(1), a person is guilty of robbery if he commits or attempts to commit a theft offense and has a deadly weapon on his person. Under R.C. 2911.02(A)(1), a person is guilty of aggravated robbery if he commits or attempts to commit a theft offense, has a deadly weapon on his person, and displays or uses the weapon.

Here, Yusuf testified that appellant, while holding a gun, demanded money from him, and Yusuf gave him about $60. Yusuf also testified that appellant forced him out of the cab and drove it away without Yusuf's permission. If believed, Yusuf's testimony alone was sufficient for the jury to find that appellant committed robbery and aggravated robbery.

Under R.C. 2921.331(B), a person is guilty of failure to comply with an order or signal of a police officer if the person "operate[s] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." The violation is a third-degree felony if, while operating the vehicle, the person "caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii).

Here, Detective Grinstead testified that he pursued the stolen cab for several blocks. During the pursuit, Grinstead activated the police cruiser's lights and siren, but appellant did not stop. Grinstead also testified that appellant was traveling through a residential area at about 50 m.p.h., ignored stop signs, and failed to slow down for speed bumps. Ultimately, the cab crashed into the front yard of a house. If believed, Grinstead's testimony alone was sufficient for the jury to find that appellant failed to comply with a police officer's signal and that he caused a substantial risk of serious physical harm to persons or property.


On these grounds, we conclude that sufficient evidence supported the jury's verdicts. Accordingly, we overrule appellant's third assignment of error.

***

[T]he evidence supporting the verdicts on the robbery and aggravated robbery charges was substantial. The state presented more than 300 still photos of the robbery as it occurred and from different angles.

The photos depict a man matching appellant's description approach the cab with his right hand in his pocket. The man is not wearing a shirt, and a large tattoo is visible on his bicep. The man leans into the cab's window on the driver's side, the man opens the door, and Yusuf, with his hands up, gets out of the cab. In several of the still photos, a dark object appearing to be a gun is visible in the man's right hand, consistent with Yusuf's testimony that the robber had a gun. Also consistent with Yusuf's testimony, the man pursues Yusuf, while Yusuf's hands are up, around the cab. Then the man gets into the cab and drives away.

Grinstead's testimony about his pursuit of the cab, including the circumstances of the pursuit through a residential neighborhood at high speed and his use of his lights and siren, was unequivocal. He said he saw the driver of the cab before he turned the cruiser around. He got a good look at the driver when he exited the cab after the crash, and he did not lose sight of him until after the suspect shot at him. Grinstead's testimony about the suspect's use of the gun was also unequivocal. While no shell casings were found, Grinstead said that he heard the shot, saw the flash, and radioed for assistance.

Grinstead was also "100 percent sure" that the suspect he pursued was appellant. While Yusuf and Robinson could not identify appellant with certainty, both Grinstead and Dripps could. Appellant had a distinctive build, was not wearing a shirt, and had prominent tattoos. In particular, the tattoo visible on the robber's bicep matches the tattoo visible on appellant's bicep during the police interview.

Finally, appellant's story about his whereabouts that night was not credible. He could not name the bar he visited or the location where he was dropped off. While he made some suggestion that a man named Jeffrey Stewart was with him and was responsible, no other evidence corroborated that suggestion.

. . . . Accordingly, we overrule appellant's second assignment of error.

*State v. Pleasant,* 2009 WL 311431, at *5-7.

Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall

> be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ( per curiam ).

*Renico v. Lett*, – U.S. –, 130 S.Ct. 1855,1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, 131 S.Ct.10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010).

In determining whether evidence is constitutionally sufficient to sustain a conviction, this Court must consider the evidence presented in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277 (1992)(*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (*quoting Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson*, at 326). For example, the trier of fact is entitled to disbelieve a defendant's uncorroborated testimony and to discount a defendant's credibility on account of a prior felony conviction. *Id*.

Further, under the AEDPA, a state court's determination regarding a sufficiency of evidence claim is entitled a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state

appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6ᵗʰ Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome.

The record fails to reflect that Petitioner can meet this burden here. When viewing all of the evidence in the light most favorable to the prosecution, as this Court is required to do, and for the reasons detailed by the state appellate court, this Court agrees that the evidence was constitutionally sufficient to sustain Petitioner's convictions.

Claim two is without merit.

## CLAIM ONE

In claim one, Petitioner asserts that he was denied the effective assistance of counsel because, *inter alia*, his attorney failed to file a motion to suppress out of court identifications of him because they were unreliable due to an unduly suggestive photographic line-up. The state appellate court rejected this claim as follows:

> [A]ppellant argues that he received ineffective assistance of counsel. We disagree.
>
> The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. *Id.* at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id.* A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Here, appellant claims that his trial counsel was ineffective for not pursuing motions to suppress Robinson's identification of appellant from a suggestive and prejudicial photo array. Appellant also faults his counsel for not objecting to testimony concerning that identification or to the admission of the photo array. We conclude, however, that, even if we were to conclude that the photo array was suggestive – a conclusion we expressly do not reach – we would not agree that counsel's failure to pursue motions to suppress or to object to the photo array caused prejudice to appellant.

First, Robinson's pre-trial identification of appellant as the robber was not particularly helpful to the prosecution. At trial, Robinson testified that he did not make a firm identification when shown the photo array, and he could not make an in-court identification either. In the end, counsel may have concluded that Robinson's equivocation was helpful to appellant. We will not second-guess counsel's strategy for doing so.

Second, we disagree with appellant's characterization of all the other evidence – aside from Robinson's identification from the photo array – as "highly circumstantial and tenuous at best." The still photos alone could serve to identify appellant as the robber, given his distinctive build and tattoos. And testimony from Grinstead and Dripps was anything but tenuous. The state presented a logical and well-supported depiction of the events surrounding the crimes, including the robbery, the pursuit of the suspect, and his apprehension. This evidence, in contrast to appellant's story about his whereabouts during the crimes, was overwhelming. We discern no basis on which we could conclude that, in the absence of Robinson's pre-trial identification, the outcome of the trial would have been any different.

*State v. Lee,* 2009 WL 311431, at *7-8. Again, these factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). Further, a federal court cannot grant habeas corpus relief unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law or was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington, supra,* 466 U.S. at 687; *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Upon review of the record, the Magistrate Judge concludes that Petitioner has failed to establish prejudice, as that term is defined under *Strickland*, from his attorney's failure to file a motion to suppress the identification of him.

Petitioner's claim of ineffective assistance of counsel based on his attorney's failure to file a motion to suppress identification is without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a Court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court determines that the petitioner failed

to comply with an adequate and independent state procedural rule, then the petitioner must demonstrate good cause for his failure to follow the procedural rule as well as actual prejudice from the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

In claim one, Petitioner asserts, *inter alia,* that he was denied the effective assistance of counsel because his attorney failed to call alibi witnesses and failed to investigate the arrest records of Jeffery Stewart. Petitioner raised a claim that his attorney had improperly failed to call "April" as an alibi witness on direct appeal. *See State v. Pleasant,* 2009 WL 311421, at *8. He failed, however, again to raise this same claim on appeal to the Ohio Supreme Court. *See Exhibit 18 to Return of Writ.* Moreover, he may now no longer do so under Ohio's doctrine of *res judicata. State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175 (1967). To the extent that Petitioner's claim regarding his attorney's failure to investigate or call Jeffery Stewart as an alibi witness is readily apparent from the face of the record, Petitioner failed to raise such claim on direct appeal. Again, Petitioner may now no longer do so. The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural defaults. The Magistrate Judge concludes that the first and second parts of *Maupin* to have been met with respect to petitioner's claim.

Next it must be determined whether the procedural rules at issue constitute an adequate and independent bases upon which to foreclose review of the petitioner's federal constitutional claims. This task requires the court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. See *Maupin v. Smith,* 785 F.2d at 138. The Court of

Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole; State v. Ishmail.* Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Magistrate Judge concludes that *res judicata* does not rely on or otherwise implicate federal law. The third part of the *Maupin* test has been met.

To the extent that Petitioner's claim of ineffective assistance relies on evidence not readily apparent from the face of the record, this claim, as previously discussed, would properly have been raised in a petition for post conviction relief pursuant to O.R.C. § 2953.21. The time period for filing such an action has now long since expired, and it does not appear from the record that Petitioner can meet the conditions for a delayed post conviction petition pursuant to O.R.C. § 2953.23, which provides in relevant part:

> Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably

prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence

The record fails to reflect that Petitioner can meet this standard here.

Petitioner may still obtain review of his claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from this alleged constitutional violation.

" '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir.2003). Petitioner has failed to establish cause and prejudice for his procedural defaults.

Beyond the four-part *Maupin* analysis, a federal habeas corpus court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Magistrate Judge finds that this is not such a case.

**WHEREUPON**, Petitioner's motion for leave to supplement the record, Doc. 11, is **DENIED**. The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge